IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Kenneth E. Thomas and
Kristin L. Thomas,

     Plaintiffs,

  v.

OneWest Bank, FSB, a
federally chartered savings
bank; and Regional Trustee
Services Corporation, a
Washington corporation;

     Defendants.

Civ. No. 10-6234-AA
OPINION AND ORDER

---

Kevin W. Luby
Elizabeth Lemoine
Luby Law
7540 SW Hermoso Way
Tigard, Oregon 97223
    Attorneys for plaintiffs

William L. Larkins
Danielle J. Hunsaker
Larkins Vacura LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
    Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant OneWest Bank, FSB ("OneWest") filed a motion to dismiss all of plaintiffs' claims, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant's motion to dismiss is granted in part and denied in part.

In addition, defendant OneWest moves for reconsideration of plaintiffs' preliminary injunction. Defendant's motion for reconsideration is denied.

## BACKGROUND

In 2005, plaintiffs took out a loan from IndyMac Bank, FSB ("IndyMac") in the amount of $252,500. Pursuant to this transaction, plaintiffs executed a promissory note in favor of IndyMac. The note was secured by a Deed of Trust, which lists IndyMac as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns," and Chicago Title Insurance Company as the trustee. The Deed of Trust was filed in Deschutes County on February 11, 2005.

In 2007, plaintiffs received unsolicited telephone calls from IndyMac. IndyMac recommended that plaintiffs modify the terms of their loan. Pursuant to these calls, plaintiffs executed an Amended and Restated Flex Pay Fixed/Adjustable Rate Note (the "Amended Note").

The initial payment under the Amended Note was approximately $990 a month. The monthly payment amount was adjustable under

Page 2 - OPINION AND ORDER

the Amended Note. However, the Amended Note stipulated that monthly payments would not increase until July 2012. Nevertheless, the monthly payment amount was increased to over $1600 in July 2009. Due to this premature increase, plaintiffs did not make continued payments due under the Amended Note.

In July 2008, the Federal Deposit Insurance Company ("FDIC") was appointed conservator over IndyMac. In March 2009, the FDIC sold IndyMac's assets to OneWest, including plaintiffs' Amended Note. On or about March 3, 2010, MERS, as nominee for IndyMac, assigned its interest in the Deed of Trust to OneWest. This assignment was recorded in Deschutes County on March 9, 2010. On or about the same date, OneWest appointed defendant Regional Trustee Services Corporation ("RTSC") as trustee of the Deed of Trust, and the assignment was recorded in the Deschutes County Official Records on March 9, 2010.

On March 9, 2010, after plaintiffs failed to make payments for over six months, RTSC recorded a Notice of Default and Election to Sell. A Trustee's Notice of Sale was issued the following day, and a trustee's sale of the real property subject to the Deed of Trust was scheduled for July 13, 2010.

On July 7, 2010, plaintiffs filed an ex parte motion for a temporary restraining order ("TRO"). The Deschutes County Circuit Court granted the motion and entered a TRO terminating on July 23, 2010. The case was removed to this Court on August 5, 2010. On November 30, 2010, this Court granted plaintiffs' motion for a preliminary injunction.

Page 3 - OPINION AND ORDER

Plaintiffs allege five claims in their complaint. Against defendant OneWest, plaintiffs allege: 1) fraud; and 2) unfair trade practices under Or. Rev. Stat. §§ 646.608(1),(2) ("UTPA"). Against all defendants, plaintiffs allege: 3) equitable estoppel; 4) emergency temporary and permanent injunctive relief pursuant to Or. R. Civ. P. 79; and 5) declaratory judgment under Or. Rev. Stat. § 28.160.

## STANDARDS

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

## DISCUSSION

Defendant moves to dismiss plaintiffs' complaint for failure to state a claim. First, defendant contends that plaintiffs' UTPA claim fails as a matter of law because UTPA does not apply to "the lending of money." Second, OneWest argues that plaintiffs' claims for fraud, UTPA, and equitable estoppel are preempted by Federal law. In the alternative, defendant moves to dismiss plaintiffs' fraud claim for failure to comply with Fed. R. Civ. P. 9(b)'s heightened pleading requirements. Finally, defendant argues that

Page 4 - OPINION AND ORDER

plaintiffs' claims for permanent injunctive relief and declaratory judgment should be dismissed because defendants have the right, under the Amended Note and Deed of Trust, to pursue foreclosure.

I. Preliminary Matters

To support their allegations, plaintiffs request that this Court take judicial notice of several documents. Specifically, plaintiffs request that this Court take judicial notice of their First Amended Complaint, which was timely filed and incorporated into defendant's pleading, but not included in defendant's notice of removal to this Court. In addition, plaintiffs request judicial notice of the following: original Note, Deed of Trust, Amended Note, Assignment of the Deed of Trust, Appointment of Successor Trustee, Notice of Default and Election to Sell, and Notice of Trustees Sale.

Review of a Rule 12(b)(6) motion is generally limited to the complaint. U.S. v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). However, a court can consider extrinsic documents if they are integral to the plaintiff's claims and their authenticity is undisputed. Parrino v. FHP, Inc., 146 F.3d 699, 706 & n. 4 (9th Cir. 1998). Under the Federal Rules of Evidence, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see also Ritchie, 342 F.3d at 909. Facts subject to judicial notice may be

considered on a motion to dismiss. Mullis v. U.S. Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

The facts contained in the documents at issue are generally known to the parties, their authenticity and accuracy "cannot reasonably be questioned," and they are integral to plaintiffs' claims. Therefore, plaintiffs' request for judicial notice is granted.

## II. Oregon's Unfair Trade Practices Act

Plaintiffs' withdraw their UPTA claim, acknowledging that, at the date of plaintiffs' 2007 refinancing, Oregon's UTPA did not apply to "the lending of money." Haeger v. Johnson, 25 Or. App. 131, 135, 548 P.2d 532 (1976); Cullen v. Inv. Strategies, Inc., 139 Or. App. 119, 127, 911 P.2d 936 (1996). Therefore, plaintiffs' UPTA claim is dismissed.

## III. Federal Preemption

Defendant argues that plaintiffs' claims for fraud and equitable estoppel are preempted by the Home Owners' Loan Act of 1933 ("HOLA"). See 12 U.S.C. § 1461 et seq. It is undisputed that under HOLA, the Office of Thrift Supervision ("OTS") regulates the entire field of lending for federal savings associations, and preempts any state laws that seek to regulate the credit activities of federal savings associations. 12 C.F.R. § 560.2(a); see also Bank of Am. v. City of San Francisco, 309 F.3d 551, 559 (9th Cir. 2002).

The parties agree that the analysis set forth in Silvas governs whether a state law is preempted by HOLA. See Silvas v.

Page 6 - OPINION AND ORDER

E*Trade Mortg. Co., 514 F.3d 1001, 1005 (9th Cir. 2008) (incorporating OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). The parties further agree that the state laws at issue in this case are not automatically preempted. Id.; see also 12 C.F.R. § 560.2(b).

Therefore, this Court must consider whether, as applied, the laws in question have more than an incidental affect on lending. Id. at 1005-6; see also 12 C.F.R. § 560.2(c). If either of the laws in question do, in fact, affect lending, a presumption of preemption arises that can only be overcome if the law fits within the narrowly construed list of exemptions. Silvas, 514 F.3d at 1005. While preemption ultimately depends on the nature of the claim, "any doubt should be resolved in favor of preemption." Id.

A. Fraud

Plaintiffs allege that they were induced to refinance their loan due to IndyMac's misrepresentations that the Amended Note would be more favorable. Plaintiffs further allege that their loan documents were "non-consumer friendly and difficult to understand," and as a result, IndyMac failed to adequately disclose the terms of the new loan. Defendants contend that such claims have more than an incidental effect on lending, and therefore should be dismissed. The parties cite to authority from other jurisdictions in support their respective positions.

Plaintiffs rely on a case from the Seventh Circuit that is factually distinct. See In Re Ocwen Loan Servicing, LLC, 491 F.3d 638 (7th Cir. 2007). When discussing HOLA generally, however,

Page 7 - OPINION AND ORDER

Ocwen stated that HOLA "does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic state common-law-type remedies." Id. at 643. The court then listed examples of state law claims that would not be preempted:

> [S]uppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract. Or if the mortgagee (or a servicer like Ocwen) fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud.

Id. at 643-44. From this language, plaintiffs conclude that Ocwen exempts their common law claims from preemption under HOLA.

Conversely, defendant relies on a West Virginia case from the Southern District that is factually analogous to the present case. See Coffman v. Bank of Am., 2010 WL 3069905 (S.D.W.Va. Aug. 4, 2010). There, the plaintiff refinanced his mortgage, and the amount refinanced was greater than the original loan. Id. at *1. The plaintiff was approved for the larger loan based, in part, on an appraisal that the lender ordered showing an increased value of the property. Id. Plaintiff later filed suit alleging that his lender induced him to enter into a loan with less favorable terms. Id. at *6-7. Plaintiff also alleged that the lender intentionally misrepresented the value of the property through an inflated appraisal. Id. at *1-2.

Coffman held that plaintiff's claim regarding the less favorable loan was preempted by HOLA, stating that allegations

Page 8 - OPINION AND ORDER

concerning the favorability of the loan terms implicated the "processing, origination, servicing, sale or purchase . . . [of] mortgages," and that HOLA "preempts state law claims pertaining to disclosures made by federal savings banks when lending." Id. at *7-8. However, the court held that plaintiff's claim for misrepresentations regarding the value of the property were not preempted, because the claim, as applied, did not relate to the lending process or seek to impose any additional requirements or procedures on federal banks. Id. at *9.

I find that the case at bar is distinguishable from Ocwen. First, Ocwen was decided before the analytical framework in Silvas was adopted by the Ninth Circuit. Id. at *5-6, 9 (discussing Ocwen). Thus, the analysis in Ocwen differs from the analysis this Court must employ, and as such should be afforded less weight. Second, while Ocwen concluded that traditional common law actions generally avoid preemption under HOLA, that court still recognized that preemption depends on the particular nature of the claims as alleged by plaintiffs. Ocwen, 491 F.3d at 648 ("the twentieth [claim] alleges fraud, and does not appear to be preempted, though this could depend on the nature of the fraud, which is unexplained"). Thus, plaintiffs' reliance on Ocwen's statement that HOLA "does not deprive persons harmed by the wrongful acts of savings and loans associations of their basic state common-law-type remedies" is misplaced, as the statement is not a complete or accurate representation of the law. Id. at 643.

Moreover, plaintiffs' reliance on Ocwen is misplaced for

Page 9 - OPINION AND ORDER

another, independent reasons. In Ocwen, the court suggested that when a bank enters into an agreement with a homeowner that specifies an annual interest rate, and later bills the homeowner at a higher rate, the homeowner's breach of contract claim would not be preempted. Here, however, plaintiffs' did not allege a breach of contract; rather, plaintiffs alleged fraud. A breach of contract claim would only require the court to look into the terms of the contract, and whether the bank violated those terms. Accordingly, such an inquiry is one of general applicability to business transactions and only incidentally affects lending.

Conversely, a fraud claim requires the court to look into the manner in which a federal bank marketed and processed a refinancing, which directly relates to the lending practices of federal banks. Coffman, 2010 WL 3069905 at *7-8. Under the Silvas analysis, such an inquiry is precluded by HOLA. See 12 C.F.R. §§ 560.2(b)(9), (10).

Additionally, while the Ninth Circuit has not directly addressed this issue, district courts within this Circuit have held that common-law fraud claims alleging that the lender misrepresented and failed to adequately disclose loan terms were preempted by HOLA. See Hilton v. Wash. Mut. Bank, 2009 WL 3485953, *5 (N.D.Cal. Oct. 28, 2009); Fultz v. World Savings & Loan Assoc., 517 F.Supp.2d 1195, 1198 (W.D.Wash. 2008); Naulty v. Greenpoint Mort. Funding, Inc., 2009 WL 2870620, *4 (N.D.Cal. Sept. 3, 2009); Kelly v. Mortg. Electronic Systems, Inc., 642 F.Supp.2d 1048, 1054 (N.D.Cal 2009). Moreover, plaintiffs fail to cite to any case

other than Ocwen in support of their argument, despite stating repeatedly that "many courts have analyzed claims [similar to plaintiffs'] and concluded that common law state claims . . . are not precluded."

Therefore, I find that plaintiffs' fraud claim is preempted by HOLA. As such, it is unnecessary to consider whether plaintiffs' fraud claim was plead with particularity pursuant to Fed. R. Civ. P. 9(b). Plaintiffs' fraud claim is dismissed.

B. Equitable Estoppel

Plaintiffs' equitable estoppel claim is similarly based on the allegation that IndyMac misrepresented the favorabilty of the Amended Note and that its terms were not adequately disclosed. Neither party cites to any additional authority regarding plaintiffs' equitable estoppel claim. Regardless, this claim is preempted for the same reasons as plaintiffs' fraud claim. Therefore, plaintiffs' equitable estoppel claim is dismissed.

I will, however, grant plaintiffs leave to amend their First Amended Complaint to add claims for breach of contract and breach of the duty of good faith and fair dealing.

IV. Permanent Injunctive Relief and Defendant's Motion for Reconsideration

Plaintiffs' were granted a preliminary injunction, preventing the foreclosure of their home, on November 30, 2010. Plaintiffs' claim for injunctive relief is based on their assertion that defendants OneWest and RTSC lack standing to foreclose their property. Specifically, plaintiffs' contend that defendants "have

Page 11 - OPINION AND ORDER

failed to provide any authority for MERS to assign the Note, which is secured by the Trust Deed, to OneWest." (First Am. Compl. ¶ 40).

While MERS' role in this matter is discussed in greater detail in Section V, below, I find that it is inappropriate to dismiss plaintiffs' claim for permanent injunctive relief until it is determined whether they can prevail on the merits.

Additionally, defendant seeks reconsideration of plaintiffs' emergency preliminary injunction, arguing that plaintiffs' sole purpose in seeking injunctive relief is to indefinitely postpone the foreclosure of their home while avoiding any financial obligation on the property. Further, defendant argues that the preliminary injunction was improperly granted because plaintiffs are not likely to succeed on the merits of their claim for declaratory relief. However, I find that it is necessary to leave the preliminary injunction in place until all issues regarding the disputed property are resolved.

Therefore, defendant's motion to dismiss plaintiffs' claim for permanent injunctive relief is denied. Defendant's motion for reconsideration is also denied.

V. <u>Declaratory Judgment</u>

Plaintiffs seek a declaratory judgment, pursuant to Or. Rev. Stat. § 20.160, to declare that defendants have no legal or equitable rights in the Amended Note or Deed of Trust for purposes of foreclosure. Plaintiffs' argue that a declaratory judgment is necessary in order for permanent injunctive relief to be available.

Page 12 - OPINION AND ORDER

Plaintiffs' complaint, however, misconstrues the facts and law underlying this case. Plaintiffs allege that MERS assigned the Amended Note to OneWest, and since MERS was not listed in the Amended Note as a party of interest, they had no authority to act. (First Am. Compl. ¶ 40). However, MERS did not assign plaintiffs' Amended Note to OneWest. Rather, OneWest acquired the note from the FDIC.

After IndyMAc failed financially, the OTS closed the bank and appointed the FDIC as conservator. See Esparza v. IndyMac Bank, 2010 WL 2925391, *1 (N.D.Cal. July 26, 2010) (discussing the history of IndyMac). The parties do not dispute that in March, 2009, the FDIC transferred IndyMac's assets, including plaintiffs' Amended Note, to OneWest. See Areebuddin v. OneWest Bank, 2010 WL 1229233, *1 (E.D.Va. March 24, 2010) (discussing when and how OneWest acquired the assets of IndyMac); see also First Am. Compl. ¶ 8 ("about March 19, 2009, the FDIC completed a sale of IndyMac . . . to OneWest"). When acting as a conservator or receiver, the FDIC "succeed[s] to all rights, titles, powers, and privileges of the insured institution." Areebuddin, 2010 WL 1229233 at *1; 12 U.S.C. § 1821(d)(2)(A)(i). Additionally, the FDIC is empowered to "transfer any asset or liability of [these institutions] . . .without . . .assignment." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Therefore, the FDIC exercised its authority when it transferred plaintiffs' Amended Note to OneWest.

As a result of this transfer, OneWest acquired the original lender's rights and privileges under the Amended Note, including the right to foreclose. Thus, contrary to plaintiffs' assertions, OneWest's right to foreclose did not stem exclusively from MERS. Accordingly, I find that OneWest properly acquired plaintiffs' loan from the FDIC. Therefore, the only issue remaining to be determined by a declaratory judgment is whether MERS had authority, as listed beneficiary under the Deed of Trust, to assign this interest to OneWest.

It is undisputed that the plain language of the Deed of Trust lists MERS as the beneficiary. Regardless, plaintiffs contend that MERS never acquired a beneficial interest in the Amended Note or Deed of Trust, because MERS is merely an entity which tracks and records the sale of mortgage instruments. As such, plaintiffs allege that IndyMac, as lender and the original holder of the promissory note, remains the beneficiary under the Deed of Trust. As such, MERS's assignment to OneWest had no actual effect because MERS had no interest to assign.

In support of their contentions, plaintiffs rely on a recent Oregon bankruptcy case. In Re Allman, 2010 WL 3366405 (Bkrtcy.D.Or. Aug. 24, 2010). Allman concerned the priority of liens on a bankruptcy estate. Id. at *1. Specifically, the lender alleged that the release of its trust deed was ineffective because the title insurance company did not comply with the notice requirements of Or. Rev. Stat. § 86.720(3). Id. at *8.

Page 14 - OPINION AND ORDER

The statute states that before a title insurance company releases a trust deed, it must "give notice of the intention to record a release of trust deed to the beneficiary of record." Id. The title company in Allman gave notice of the intention to release the trust deed to the lender, but not to MERS, which was listed as the beneficiary on the trust deed. Id. According to the lender, this failure invalidated the release of the trust deed, because the filing of the release was not "specifically required or authorized by statute" under Or. Rev. Stat. § 87.920. Id.

Thus, the question in Allman was whether notice to MERS was required by Or. Rev. Stat. § 86.720(3). "Beneficiary" is defined within the statute as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given[.]" Id.; Or. Rev. Stat. § 86.705(1). However, there is no analysis in Allman regarding MERS' role with respect to foreclosure or its assignment authority, and as such, it is not directly on point. See Burgett v. Mortgage Electronic Registration Systems, Inc., 2010 WL 4282105 (D.Or. Oct 20, 2010) (distinguishing Allman from foreclosure cases).

Regardless, in discussing MERS's role as a "beneficiary" under a Deed of Trust, the court stated that, despite the explicit language of the trust deed, the lender "is the beneficiary . . . [t]he trust deed makes clear that MERS is merely a nominee for the lender and that the trust deed is for the benefit of the lender." In Re Allman, 2010 WL 3366405 at *9.

Page 15 - OPINION AND ORDER

The court concluded that the relationship of MERS to the lender "is more akin to that of a straw man than to a party possessing all the rights given a buyer." Id. at *10 (quoting Landmark Nat'l Bank v. Kesler, 289 Kan. 528, 539 (2009)). Plaintiffs argue that this case establishes, "clear[ly] and unequivocal[ly]," that MERS is not actually a beneficiary, and as such, it lacks the authority to "transfer the Note" or "the beneficial interest of the trust deed without ownership of the underlying Note." (Plfs. Resp. to Mot. to Dismiss at 12.)

Defendant argues that MERS was an appropriate beneficiary as listed on the Deed of Trust and that plaintiffs' assertions to the contrary simply misstate the law. They contend that courts, both within and outside the Ninth Circuit, have recognized that MERS, acting as nominee for a lender, can serve as a beneficiary, and as such, has the authority to assign its interest under a Deed of Trust. See Robinson v. Wells Fargo Bank, 2010 WL 2534192, *4 (D.Ariz. June 18, 2010); Vawter v. Quality Loan Serv. Corp. Of Wash., 707 F.Supp.2d 1115, 1126 (W.D.Wash., 2010); Stewart v. MERS, 2010 WL 10655131, *12 (D.Or. Feb. 9, 2010); Derakhshan v. Mortgage Electronic Registration Systems, Inc., 2009 U.S. Dist. Lexis 63176, *18 (C.D.Cal. June 29, 2009) ("By signing the Deed of Trust, Plaintiff . . . explicitly authorized MERS to act as beneficiary with the right to foreclose on the property . . . Plaintiff is clearly not entitled to injunctive relief based on MERS' standing"). Here, the Deed of Trust states that "[t]he beneficiary of this Security Instrument is MERS . . .

Page 16 - OPINION AND ORDER

and the successors and assigns of MERS." By signing the Deed of Trust, plaintiffs agreed that MERS would be the beneficiary, act as nominee for the lender, and have the power to assign its beneficial interest. Thus, defendant argues that plaintiffs expressly consented to MERS' assignment of its interest in the Deed of Trust to OneWest.

I am inclined to agree with defendant, and note that plaintiffs have failed to allege any facts demonstrating that MERS lacked authority to assign its interest under the Deed of Trust. As discussed above, plaintiffs' arguments are based on an incorrect interpretation of the law and facts underlying this case. MERS did not transfer the Amended Note; the FDIC did. MERS' role was limited to essentially recording the transfer of the Deed of Trust from IndyMac to OneWest. Regardless, I find that it is inappropriate to resolve this issue at this stage in the proceedings. In the last several months, "a veritable tsunami of investigation into and litigation over mortgage foreclosure practices broke loose on a national scale." <u>Bertrand v. Suntrust Mortgage, Inc.</u>, No. 09-857, Opinion and Order at 2 (D.Or. Nov. 1, 2010). Until case law within this jurisdiction is developed regarding MERS' role as beneficiary, it is impossible to conclude whether plaintiffs' complaint states a claim. As such, I deny defendant's motion to dismiss plaintiffs' claim for declaratory judgment.

Additionally, I deny plaintiffs' request for leave to amend

Page 17 - OPINION AND ORDER

their First Amended Complaint in order to add MERS as a defendant. While MERS is a significant player in this case, it no longer has an interest in the Deed of Trust and is not participating in the foreclosure at issue. Therefore, it would be futile to add MERS as a defendant at this stage in the proceedings. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)) (a court does not have to grant leave to amend if amendment would prove futile). Further, plaintiffs are still able to challenge MERS' authority to assign the Deed of Trust without adding MERS as a defendant. Thus, plaintiffs' claims are not prejudiced in any way by this Court's refusal to add MERS as a defendant.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss (doc. 7) is GRANTED in part and DENIED in part as follows: defendant's motion is GRANTED as to plaintiffs' claims for fraud, equitable estoppel, and UTPA; defendant's motion is DENIED as to plaintiffs' claims for permanent injunction and declaratory judgment. Further, defendant's motion for reconsideration (doc. 28) of plaintiffs' Emergency Motion for Preliminary Injunction is DENIED.

Plaintiffs' request for leave to amend their First Amended Complaint in order to add claims for breach of contract and breach of the duty of good faith and fair dealing is GRANTED.

Page 18 - OPINION AND ORDER

However, plaintiffs' request for leave to amend in order to add MERS as a defendant is DENIED. Defendant's request for oral argument is DENIED as unnecessary.

Finally, it is significant that the court has carefully considered this case along with the dozens of cases like it that have been filed in this District in a timely and efficient manner. In an attempt to further streamline this process, this District has put together a panel of Foreclosure Mediation experts and now regularly refers foreclosure cases to one of the designated experts on this panel for mediation and resolution. The court encourages the parties here to contact the court if interested in pursuing mediation via the Foreclosure Mediation Panel.

IT IS SO ORDERED.

Dated this  9  day of March 2011.

                              **/s/ Ann Aiken**
                                Ann Aiken
                       United States District Judge