FILED 15 AUG '11 12:26 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Kenneth E. Thomas and
Kristin L. Thomas,

      Plaintiffs,

    v.

OneWest Bank, FSB, a
federally chartered savings
bank; and Regional Trustee
Services Corporation, a
Washington corporation;

      Defendants.

Civ. No. 10-6234-AA
OPINION AND ORDER

_____

Kevin W. Luby
Elizabeth Lemoine
Luby Law
7540 SW Hermoso Way
Tigard, Oregon 97223
    Attorneys for plaintiffs

William L. Larkins
Danielle J. Hunsaker
Larkins Vacura LLP
621 SW Morrison St., Suite 1450
Portland, Oregon 97205
    Attorneys for defendants

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant OneWest Bank, FSB ("OneWest") filed a motion to dismiss plaintiffs' claims for breach of contract and breach of the implied duty of good faith and fair dealing ("duty of good faith"), with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6). Defendant's motion to dismiss is granted.

## BACKGROUND

In 2005, plaintiffs took out a loan from IndyMac Bank, FSB ("IndyMac") in the amount of $252,500. Pursuant to this transaction, plaintiffs executed a promissory note in favor of IndyMac. The note was secured by a Deed of Trust, which lists IndyMac as the lender, Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, "acting solely as a nominee for Lender and Lender's successors and assigns," and Chicago Title Insurance Company as the trustee. The Deed of Trust was filed in Deschutes County on February 11, 2005.

In 2007, plaintiffs received unsolicited telephone calls from IndyMac.  IndyMac recommended that plaintiffs modify the terms of their loan.  Pursuant to these calls, plaintiffs executed an Amended and Restated Flex Pay Fixed/Adjustable Rate Note (the "Amended Note").

The initial payment under the Amended Note was approximately $990 a month.  The monthly payment amount was adjustable under the Amended Note.  However, the Amended Note stipulated that monthly payments would not increase until July 2012 unless

Page 2 - OPINION AND ORDER

certain conditions were met.  Eventually, the monthly payment
amount was increased to over $1600 in July 2009.  Due to this
increase, plaintiffs were unable to make payments under the
Amended Note.

In July 2008, the Federal Deposit Insurance Company ("FDIC")
was appointed conservator over IndyMac.  In March 2009, the FDIC
sold IndyMac's assets to OneWest, including plaintiffs' Amended
Note.  On or about March 3, 2010, MERS, as nominee for IndyMac,
assigned its interest in the Deed of Trust to OneWest.  This
assignment was recorded in Deschutes County on March 9, 2010.  On
or about the same date, OneWest appointed defendant Regional
Trustee Services Corporation ("RTSC") as trustee of the Deed of
Trust, and the assignment was recorded in the Deschutes County
Official Records on March 9, 2010.

On March 9, 2010, after plaintiffs' failed to make payments
for over six months, RTSC recorded a Notice of Default and
Election to Sell.  A Trustee's Notice of Sale was issued the
following day, and a trustee's sale of the real property subject
to the Deed of Trust was scheduled for July 13, 2010.

On July 7, 2010, plaintiffs filed an ex parte motion for a
temporary restraining order ("TRO").  The Deschutes County
Circuit Court granted the motion and entered a TRO expiring on
July 23, 2010.  The case was then removed to this Court on August
5, 2010.  On November 30, 2010, this Court granted plaintiffs'
motion for a preliminary injunction to halt the foreclosure and
preserve the status quo.

Plaintiffs allege four claims in their complaint. Plaintiffs allege: 1) breach of contract; and 2) breach of the implied duty of good faith and fair dealing against defendant OneWest. Against all defendants, plaintiffs allege: 3) emergency temporary and permanent injunctive relief pursuant to Or. R. Civ. P. 79; and 4) declaratory judgment under Or. Rev. Stat. § 28.160.

## STANDARDS

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Review is limited to the contents of the complaint. See Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Id. The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). This Court has previously taken judicial notice of the Amended Note incorporated in Plaintiffs' Amended Complaint. Op. & Order 5-6.

## DISCUSSION

Defendant OneWest moves to dismiss plaintiffs' Amended Complaint for failure to state a claim. First, defendant contends that plaintiffs' breach of contract claim fails to state a claim

Page 4 - OPINION AND ORDER

because defendant had a contractual right to increase payments under the Amended Note. Second, defendant argues that plaintiffs' claim for breach of the duty of good faith is preempted by federal law, and alternatively, for failure to state a claim. Finally, defendant argues that any damage resulting from information provided by defendant to credit reporting agencies is preempted by federal law.

I. Breach of Contract: Monthly Payment Increase Before July 1, 2012

Plaintiffs allege that defendant breached the terms of the Amended Note because defendant increased the monthly payment due on the note prior to July 1, 2012, or because defendant wrongfully initiated foreclosure proceedings. Defendant contends that plaintiffs have failed to state a claim for breach of contract because defendant properly exercised rights expressly granted to it under the terms of the Amended Note.

In a diversity action, the substantive law of the forum state will apply. Farina v. Mt. Bachelor, Inc., 66 F.3d 233, 235 (9th Cir. 1995). In Oregon, a plaintiff must allege four elements to state a breach of contract action: 1) existence of a contract, 2) relevant terms, 3) plaintiff's full performance and lack of breach; and 4) harm to plaintiff. Slover v. Oregon State Bd. of Clinical Social Workers, 144 Or.App. 565, 569-70, 927 P.2d 1098 (1996).

The Oregon Supreme Court has identified a three step test for the interpretation of disputed contract provisions. Yogman v. Parrott, 325 Or. 358, 361, 937 P.2d 1019 (1997). The first step asks the court to determine, as a matter of law, if the disputed

Page 5 - OPINION AND ORDER

term is ambiguous. Id. If the court finds that the term is unambiguous then the analysis ends and the court will construe the term as a matter of law. The court will not consider any extrinsic evidence. Webb v. National, 207 F.3d 579, 581-83 (9th Cir. 2000) (citing Yogman, 325 Or. at 361, 937 P.2d 1019).[1] A term is ambiguous "if it has no definite significance or if it is capable of more than one sensible and reasonable interpretation. A term is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." Oakridge Cablevision, Inc v. First Interstate Bank of Oregon, N.A., 65 Or.App. 640, 646, 673 P.2d 532 (1983) (citing May v. Chicago Ins. Co., 260 Or. 285, 293, 490 P.2d 150

---

[1] The Court recognizes that there is some debate about Yogman's holding. The Ninth Circuit found:

> Although Abercrombie v. Hayden Corp., 320 Or. 279, 292, 883 P.2d 845 (1994), has not been expressly overruled, later Oregon Supreme Court and Oregon Court of Appeals cases have not followed its implication that extrinsic evidence may be considered in determining whether an ambiguity exists. Rather, the consensus among Oregon courts is that they are opposed to considering extrinsic evidence to determine the parties' intent unless an ambiguity is apparent from the four corners of the document. See, e.g., Yogman, 325 Or. at 361, 363-364, 937 P.2d 1019; Roe v. Doe, 161 Or.App. 477, 487, 984 P.2d 344 (1999) ("[I]f, but only if, an ambiguity exists, we 'examine extrinsic evidence.' " (quoting Yogman, 325 Or. at 363, 937 P.2d 1019)); Crain v. Siegel, 151 Or.App. 567, 572, 950 P.2d 382 (1997) (same). Yogman, which was decided after Abercrombie, concluded that the parol evidence rule prohibits the admission of extrinsic evidence in a case in which a contract is unambiguous. See Yogman, 325 Or. at 361, 937 P.2d 1019.

Webb, 207 F.3d at 582. However, the Oregon Court of Appeals has taken issue with the Ninth Circuit's disposition of Yogman. Batzer Const., Inc. v. Boyer, 204 Or. App. 309, 315-316, 129 P.3d 773 (2006). Batzer declined to find Abercrombie implicitly overruled. Id. (extrinsic evidence of ambiguity was not before the court in Yogman so it couldn't apply the entirety of Oregon's three step framework). As the Oregon Supreme Court has yet to decide this matter, this Court is bound by Ninth Circuit precedent and therefore finds Yogman controlling.

(1971)); See also Pacific First Bank v. New Morgan Park Corp., 319
Or. 342, 347-348, 876 P.2d 761 (1994).

Initially, this Court must decide if the terms at issue are
ambiguous. If the language of the provisions is "capable of more
than one sensible and reasonable interpretation," then the language
is ambiguous. Oakridge, 65 Or.App. at 646, 673 P.2d 532. Plaintiffs
assert that Sections 3(C) and 4(F) of the Amended Note are
ambiguous. Plaintiffs argue this ambiguity gave plaintiffs an
expectation that their monthly payment would not increase before
July 1, 2012. Defendant allegedly breached the contract by
increasing plaintiffs' monthly payment before that date.
Specifically, plaintiffs argue that Section 4(F) is ambiguous
because the language is "confusing and technical." Pls.' Resp. to
Def.'s Second Mot. to Dismiss 4, April 29, 2011. Defendant responds
that plaintiffs had a duty to read and understand the terms of the
Amended Note.

The relevant terms of the Amended Note are as follows:

Section 3(C) Payment Changes
My monthly payments will remain the same until July 1, 2012,
the month after the first Change Date, and will not change
again until after I have made my 120th monthly payment unless
it is required to change in accordance with Section 4(F)
below.

(...)

Section 4(F) Limit on My Unpaid Balance: Increased Monthly
Payment
My unpaid balance can never exceed a maximum amount equal to
one hundred ten and NO/1000ths percent (110.00%) of the
principal amount I originally borrowed. Because of my paying
only limited monthly payments until I have made 120 scheduled
monthly payments, the addition of unpaid interest to my unpaid

Page 7 - OPINION AND ORDER

balance under Section 4(E)[2] above could cause my unpaid balance to exceed that maximum. In that event, on the date that the payment of my monthly payment could cause me to exceed that limit, I will instead pay a new monthly payment equal to the interest only portion of the Full Payment if I have made less than 120 scheduled monthly payments.

Although the Court acknowledges the complexity of Sections 3(C)and 4(F), the language does not lend itself to more than one reasonable interpretation. Section 3(C) requires plaintiffs to make a fixed monthly payment "until July 1, 2012 ... unless it is required to change in accordance with Section 4(F) below." Section 4(F) cautions that the "unpaid balance" can never exceed "110% of the principal amount [plaintiffs] originally borrowed." The section then cautions plaintiffs that by making only limited payments, their principal could be in danger of exceeding the maximum. Finally, the section warns plaintiffs that their monthly payment would then increase on the month that their principal exceeded 110% of the original amount borrowed.

The plain language of the Amended Note is unambiguous. Plaintiffs cite no cases, and this Court finds none, in which confusing language has been equated with ambiguity. Cases in Oregon where ambiguity is found typically deal with terms of art. See Eden Gate, Inc. v. D & L Excavating & Trucking, Inc., 178 Or.App. 610, 618-619, 37 P.3d 233 (2002) (finding the term "contaminated soil" ambiguous and adopting the meaning found in DEQ regulations); Logan v. D.W. Sivers Co., 343 Or. 339, 350, 169 P.3d 1255 (2007) (finding the term "approximately 15 days" ambiguous due to its discretionary

---

[2] Section 4(E) describes the addition of any excess, unpaid interest due in a given month to the principal.

nature); and <u>Turudic v. Stephens</u>, 176 Or. App. 175, 185-86, 31 P.3d 465 (2001) (finding the term "residential use" ambiguous due to multiple meanings).

Here, the terms at issue in the Amended Note are concrete and without alternative definitions. Plaintiffs fail to offer, and this Court cannot find, any other reasonable interpretations of the language in the Amended Note. <u>See</u> <u>Riverside Homes, Inc. v. Murray</u>, 230 Or.App. 292, 304, 214 P.3d 835 (2009) (finding ambiguity where both parties offered reasonable interpretations of the contract). Therefore, plaintiffs' monthly payment was properly increased before July 1, 2012.[3]

Determining the month in which plaintiffs' payment increases under Section 4(F) requires calculations that may prove challenging for some. Nonetheless, plaintiffs had a duty to understand the terms of the Amended Note. <u>Foster v. Gibbons</u>, 177 Or.App. 45, 55, 33 P.3d 329 (2001) (internal citation omitted) ("[P]arties contracting at arm's-length ... nevertheless have a duty to learn and know contract's contents before they sign ...."). Plaintiffs profess confusion as to if and when their monthly payment would increase. Unfortunately, plaintiffs' confusion does not relieve plaintiffs of their duty to make the required payment on the Amended Note under Section 4(F).

Plaintiffs were provided notice of the monthly payment increase, yet they continued to pay the original amount. The plain

---

[3]This Court doesn't consider if the date or amount of the plaintiffs' payment increase is correct, as plaintiffs have not alleged otherwise.

Page 9 - OPINION AND ORDER

language of the Amended Note provides for the increased monthly payments. Defendant did not breach the agreement when it required plaintiffs to make those payments, instead, plaintiffs breached the agreement by failing to make the increased payments required by Section 4(F). Further, plaintiffs have failed altogether to allege the third and fourth elements necessary to state a claim for breach of contract. For these reasons, plaintiffs' breach of contract claim, as it relates to the increased monthly payments, is dismissed for failure to state a claim.

II. <u>Breach of Contract: Foreclosure Action</u>

As a direct result of plaintiffs' failure to make the required monthly payment under Section 4(F), defendant initiated foreclosure proceedings against plaintiffs' property. Although the Amended Note is properly before this Court, the terms governing foreclosure are not. Plaintiffs argue that the foreclosure was wrongful because they "were making payments as required by the terms of the [Amended Note]." Pls' Am. Compl. ¶ 19. However, because the terms of the Amended Note are properly before this Court, any discrepancies between plaintiffs' Complaint and the Amended Note will be resolved in favor of the writing. For the reasons outlined above, plaintiffs failed to make the payments required under the terms of the Amended Note. Plaintiffs, therefore, have failed to state a claim for breach of contract because they have not alleged that they were without breach. Thus, plaintiffs' breach of contract claim, as it relates to defendant's foreclosure action, is dismissed for failure to state a claim.

III.  Implied Duty of Good Faith and Fair Dealing

Plaintiffs allege four separate acts of defendant's predecessor in interest, IndyWest, that breached the implied duty of good faith. First, plaintiffs allege IndyWest made false or misleading representations about the benefits of the Amended Note and obscured the terms of the monthly payment calculation. Second, plaintiffs allege IndyWest represented the Amended Note as a beneficial modification to the original note when it really contained hidden terms that resulted in a higher interest rate and larger monthly payments. Third, plaintiffs allege IndyWest failed to disclose the Amended Note's higher interest rate, used a more volatile calculation index, and the payment amount would increase before 2012. Finally, plaintiffs allege IndyWest used a "bait and switch" tactic in the language of the Amended Note to obscure the possibility that the monthly payment would increase before July 1, 2012. Defendant contends that such claims have more than an "incidental effect on lending," and therefore should be dismissed as preempted by the Home Owners' Loan Act of 1933 ("HOLA"). Alternatively, defendant contends that plaintiffs have failed to state a claim because they could not have reasonably expected their monthly payment to remain static until July 1, 2012.

A.  Federal Preemption

Defendant argues that plaintiffs' claim for breach of the implied duty of good faith is preempted by the HOLA. See 12 U.S.C. § 1461 et seq.  It is undisputed that under HOLA, the Office of Thrift Supervision ("OTS") regulates the entire field of lending

Page 11 - OPINION AND ORDER

for federal savings associations, and preempts any state laws that seek to regulate the credit activities of federal savings associations.  12 C.F.R. § 560.2(a); see also Bank of Am. v. City of San Francisco, 309 F.3d 551, 559 (9th Cir. 2002).

The Ninth Circuit has examined whether a state law is preempted by HOLA. See Silvas v. E*Trade Mortg. Co., 514 F.3d 1001, 1005 (9th Cir. 2008) (incorporating OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). First, this Court must consider if the type of law at issue is one listed in 12 C.F.R. § 560.2(b), if it is, the claim is expressly preempted. If it is not listed, this Court must consider whether, as applied, the law in question has more than an "incidental effect on lending."  Id. at 1005-6; see also 12 C.F.R. § 560.2(c). A claim will have a greater than incidental effect on lending where success on the claim would necessarily require the bank to change the terms by which it offered credit or the manner in which it advertised. 12 C.F.R. § 560.2(c)(6)(ii) (law is not preempted where it is not contrary to the Act's purpose of furthering uniform, national banking regulations); See also 12 C.F.R. § 560.2(b)(4,9). If the law in question does, in fact, effect lending, a presumption of preemption arises that can only be overcome if the law fits within the narrowly construed list of exemptions. Silvas, 514 F.3d at 1005; 12 C.F.R. § 560.2(c). While preemption ultimately depends on the nature of the claim, any doubt should be resolved in favor of preemption. Id.

Plaintiffs identify four separate actions by defendant or

Page 12 - OPINION AND ORDER

defendant's predecessor that allegedly breach the implied duty of good faith. Although plaintiffs allege a state law claim, that claim will be preempted if, as applied, the claim attempts to regulate lending. See Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 416 (N.D.Cal. 2009). A claim arising in contract may escape preemption if it is brought to enforce the terms of a bargain struck by a federal lending institution. See Davis v. Chase Bank U.S.A., N.A., 650 F.Supp.2d 1073, 1086-87 (C.D.Cal. 2009) ("Such a claim does not seek to force [Bank] to set its contracts in a certain way, but rather merely to adhere to the contracts it does create."). However, the court must look beyond the title of the claim to determine if it is instead being used as a vehicle to regulate defendant's lending practices. Newsom v. Countrywide Home Loans, Inc., 714 F.Supp.2d 1000, 1007 (N.D.Cal. 2010) (citing Silvas, 514 F.3d at 1005-06). See also Schilke v. Wachovia Mortg., FSB, 758 F.Supp.2d 549, 556-57 (E.D.Ill. 2010) ("The question of whether a contract claim is or is not preempted under the regulations turns on the conduct at issue, not the label given to the putative cause of action.")(citing In re Ocwen, 491 F.3d 638, 646 (7th Cir. 2007)).

Claims arising in contract are exempt from preemption "to the extent that they only incidentally affect the [bank's] lending operations." 12 C.F.R. § 560.2(c). This Court previously found a fraud claim preempted where it required the court "to look into the manner in which a federal bank marketed and processed a refinancing." Thomas v. OneWest Bank, FSB, 2011 WL 867880 at *5

Page 13 - OPINION AND ORDER

(D.Or. Mar. 10, 2011) (citing <u>Coffman v. Bank of Am.</u>, 2010 WL 3069905 at *7-8 (S.D.W.Va. Aug. 4, 2010)).

While the Ninth Circuit has not directly addressed this issue, district courts within this Circuit have held claims based upon similar facts preempted. See <u>Poco v. Wachovia Mortg. Corp.</u>, 2011 WL 2633298, at *3-4 (N.D.Ca. July 5, 2011) (breach of contract claim based on defendant's inducing misrepresentations was preempted by 12 C.F.R. § 560.2(b)(4,5,10)); <u>Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.</u>, 2011 WL 835593, at *6 (N.D.Ca. March 4, 2011) (fraud claim based, in part, on defendant's failure to disclose the note's negative amortization terms was preempted by 12 C.F.R. § 560.2(b)(4,9,10)); <u>Fultz v. World Savings & Loan Assoc.</u>, 571 F.Supp.2d 1195, 1198 (W.D.Wash. 2008) (fraud claim based on defendant's failure to "provide timely and meaningful disclosure[s]" was preempted by 12 C.F.R. § 560.2(b)(9)). <u>Cf.</u> <u>Davis v. Chase Bank U.S.A., N.A.</u>, 650 F.Supp. 2d 1073, 1086 (C.D.Ca. 2009) (not preempted where the "claim does not seek to force [Bank] to set its contracts in a certain way, but rather merely to adhere to the contracts it does create.").

Plaintiffs rely on <u>Gibson v. World Savings & Loan Assoc.</u> 103 Cal.App.4th 1291, 1299, 128 Cal.Rptr.2d 19 (Cal.Ct.App. 2002). <u>Gibson</u> holds, "The state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive business practices." <u>Id.</u> (internal citation omitted). However, the Ninth Circuit found preemption under much broader circumstances in

Page 14 - OPINION AND ORDER

<u>Silvas</u>. 514 F.3d at 1005. Plaintiffs' reliance on <u>Gibson</u> is misplaced because this Court is bound by the Ninth Circuit's precedent in <u>Silvas</u>. <u>See</u> <u>Curcio v. Wachovia Mortg. Corp.</u>, 2009 WL 3320499, at *5 (S.D.Ca. Oct. 14, 2009).

Defendant argues that plaintiffs have simply re-titled their claim for fraud as a claim for breach of the implied duty of good faith.[4] This Court agrees. Plaintiffs' original claim for fraud alleged facts showing IndyWest used misrepresentation to induce plaintiffs to enter into the Amended Note. Pls.' First Am. Compl. ¶¶13-18, July 22, 2010. Plaintiffs' claim at bar for breach of the implied duty of good faith alleges the same facts, albeit phrased differently. Pls.' Am. Compl. ¶24(A - D), April 4, 2011.

### B.   <u>Failure to State a Claim</u>

To the extent that plaintiffs' breach of the implied duty of good faith claim is not preempted, it is nevertheless dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Defendant argues that plaintiffs have failed to state a claim for breach of the implied duty of good faith because defendant has not acted in contravention to the parties' objectively reasonable expectations. Plaintiffs assert that their objectively reasonable expectations included a fixed monthly payment until July 1, 2012, and thus, their expectations were thwarted when their monthly

---

[4] Plaintiffs' first complaint explains the facts as a narrative, whereas the complaint at bar restates those same facts as a list. Objectively, the material facts do not differ between the fraud claim in the first complaint and the breach of the implied duty of good faith claim in the current complaint. <u>Compare, e.g.</u>, Pls.' Am. Compl. ¶24(A) <u>with</u> Pls.' First Am. Compl. ¶¶13, 16, 20.

payment increased on July 1, 2009.

Oregon courts have implied a duty of good faith and fair dealing in all contracts. Best v. U.S. Nat. Bank of Oregon, 303 Or. 557, 561, 739 P.2d 554 (1987). This duty is applied by the courts to ensure that the reasonable contractual expectations of the parties are met. Id. at 563. However, a "party invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith." Uptown Heights Associates Ltd. Partnership v. Seafirst Corp., 320 Or. 638, 645, 891 P.2d 639 (1995). Invocation of the duty of good faith and fair dealing does not change the substantive terms of the bargain. Pacific First Bank v. New Morgan Park Corp., 319 Or. 342, 352-53, 876 P.2d 761 (1994) (citing Best, 303 Or. at 567, 739 P.2d 554). Furthermore, Oregon courts have determined that the duty of good faith and fair dealing does not attach until after the formation of the contract. Tolbert v. First Nat. Bank of Oregon, 312 Or. 485, 492, 823 P.2d 965 (1991) (internal citation omitted).

Plaintiffs' complaint, along with the terms of the Amended Note fail to support plaintiffs' contention that they reasonably expected a static monthly payment until July 1, 2012. The conduct by IndyWest that plaintiffs allege breached the implied duty of good faith occurred prior to the contract's formation. Additionally, defendants could not upset plaintiffs' objectively reasonable expectations by increasing the monthly payment prior to July 1, 2012, because that right was expressly granted to defendant by the plain terms of the Amended Note.

Page 16 - OPINION AND ORDER

Plaintiffs have alleged four actions by IndyWest that breached the implied duty of good faith. The first two describe IndyWest's misrepresentations about the benefits of the Amended Note, the third describes IndyWest's failure to disclose differences between the Amended Note and plaintiffs' original note, and the fourth describes the language of the Amended Note as confusing. The first three alleged actions clearly occurred prior to the formation of the contract. The fourth alleged action appears to concern IndyMac's drafting of the Amended Note with reference to the Note's confusing language. As the implied duty of good faith does not attach until after the contract is formed, Tolbert, 312 Or. at 492, 823 P.2d 965, defendant did not have a duty, under this cause of action, to make representations in good faith or to draft the terms of the agreement in good faith.[5] Plaintiffs have failed to state a claim for breach of the implied duty of good faith for any events occurring before the formation of the contract.

Any claim by plaintiffs asserting breach of the implied duty of good faith after contract formation is also dismissed. Although the implied duty of good faith is intended to ensure the parties' objectively reasonable expectations are met, the substantive terms of the contract cannot be altered. Pacific, 319 Or. 352-53, 876 P.2d 761. Plaintiffs allege they had a reasonable expectation that their monthly payment would not increase until July 1, 2012, but the terms of the Amended Note discredit the reasonableness of that

---

[5]This Court is aware that there is a duty to avoid misrepresentations, but relief must come from a different cause of action. See Tolbert, 312 Or. at 492 n.4, 823 P.2d 965.

expectation. As explained in Part I, the terms of the Amended Note clearly contemplate the possibility of a monthly payment increase before July 1, 2012. E.g. Pls.' Am. Compl. Ex. A at §3(C)("My monthly payment will remain the same until July 1, 2012 ... unless it is required to change in accordance with Section 4(F) below."). Defendant had an express right under the terms of the contract to increase plaintiffs' monthly payment if their principal balance exceeded 110% of the original amount borrowed. Id. at §4(F)  ("My unpaid balance can never exceed a maximum amount ... In that event ... I will instead pay a new monthly payment."). As the express terms of the Amended Note grant defendant the right to increase plaintiffs' monthly payments in the event that a condition is met, defendants cannot be said to have breached the implied duty of good faith by exercising that right. Uptown Heights, 320 Or. at 645, 891 P.2d 639. Plaintiffs' claim for breach of the implied duty good faith is dismissed.

Finally, plaintiffs' complaint alleges that defendant OneWest entered into a "loss-share" agreement which would provide a windfall in the event of plaintiffs' default. Pls.' Am. Compl. ¶25. They cite this agreement as defendant's motivation for acting in bad faith. Plaintiffs' argument is without merit. Plaintiffs entered into the Amended Note with IndyMac, defendant's predecessor in interest; OneWest had no part in the representations provided to plaintiff or in drafting the terms of the Amended Note. Further, even if OneWest would realize a windfall in the event of plaintiffs' default, this motive has no relation to the actions

Page 18 - OPINION AND ORDER

that allegedly breached the implied duty of good faith. Plaintiffs allege no set of facts that demonstrate defendant, even with a motive, acted in bad faith, leading to plaintiffs' default. Plaintiffs' claim for breach of the implied duty of good faith is dismissed for failure to state a claim.

IV. <u>Damage to Plaintiffs' Credit Score</u>

Defendant moves to dismiss plaintiffs' claim for damages resulting from a decrease in plaintiffs' credit score. As all claims asserted by plaintiff which may give rise to damages have been dismissed, defendant's motion is denied as moot.

## CONCLUSION

Defendant's motion to dismiss (doc. 42) is GRANTED. Defendant's request for oral argument is DENIED as unnecessary. As to plaintiffs' third and fourth claims for Injunctive Relief and Declaratory Judgement, respectively, those are also dismissed. The preliminary injunction previously entered by this Court on November 30, 2010 (doc. 27), is hereby lifted. This case is dismissed and all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this ___11th___ day of ~~July~~ August 2011.


_____
                Ann Aiken
    United States District Judge